IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PATRICK O. DEVANEY, II and TRIDENT VENTURES, INC. | § § § | |
| Plaintiffs, | § § § | |
| v. | § § | Case No. 4:14-cv-771 |
| QUANTA SERVICES, INC.; QUANTA GOVERNMENT SOLUTIONS, INC.; QUANTA GOVERNMENT SERVICES, INC.; QUANTA INTERNATIONAL LIMITED; and JOHN R. COLSON | § § § § § § | |
| Defendants. | § | |

Defendants' Motion For Summary Judgment on All Claims

<div style="margin-left:40%">

Shawn L. Raymond
S.D. Adm. # 26202
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, Texas 77002-5096
Telephone:  (713) 651-9366
Fax:  (713) 654-6666
Email:  sraymond@susmangodfrey.com

*Attorney-in-Charge for Defendants*

</div>

Of Counsel:
Eric J. Mayer
S.D. Adm. # 09698
Matthew Behncke
S.D. Adm. # 1121174
1000 Louisiana Street, Suite 5100
Houston, Texas 77002-5096
Telephone:  (713) 651-9366
Fax:  (713) 654-6666
Email: emayer@susmangodfrey.com
Email: mbehncke@susmangodfrey.com

Table of Contents

I. Introduction and Summary of the Argument..............................................................1

II. Procedural History..................................................................................................3

III. Statement of Undisputed Facts ...............................................................................4

      A.     Plaintiffs Submitted 100+ Consulting Invoices to Quanta over Eight Years – and None Mentioned a Promised Carried Interest.....................................5

      B.     Plaintiffs' Contemporaneous Emails Undercut Their Claim of a Promised Carried Interest ...............................................................................8

      C.     Plaintiffs Made No Demand for a Promised Carried Interest When Quanta Ended the Consulting Relationship .................................................9

      D.     Plaintiffs First Claim a Promised Carried Interest Eight Years Later ..................10

      E.     Plaintiffs' Excel Spreadsheet Does Not Evidence a Promise for a Carried Interest.......................................................................................12

IV. Legal Standard and Standard of Review .................................................................14

V. Argument .............................................................................................................15

      A.     Plaintiffs' Fraud, Promissory Estoppel, and Negligent Misrepresentation Claims  (Causes of Action I, II and VII) Fail as a Matter of Law .............................................................................................15

            1.     The fraud-based claims all require Plaintiffs to prove they justifiably relied on the alleged promises from Quanta ...........................15

            2.     Plaintiffs cannot show reasonable or justifiable reliance on the alleged promises..................................................................................16

                  a.     The alleged "promise" of a carried interest and profit sharing is too vague to support reliance.........................................16

                  b.     The Statute of Frauds bars enforcement of the alleged promises .....................................................................................21

                  c.     Plaintiffs could not have relied on unspecified promises of "additional compensation" and Quanta's ability to perform unidentified projects........................................................22

      B.     Plaintiffs Have No Evidence of a Formal or Informal Fiduciary Relationship (Cause of Action IV) .........................................................24

i

C.      Plaintiffs Negligence and Tortious Breach of Confidentiality Claims (Cause of Action III) Fail as a Matter of Law ........................................................28

D.      Plaintiffs' Quantum Meruit Claim  (Cause of Action VI) Fails as a Matter of Law .........................................................................................32

E.      Plaintiffs' Unjust Enrichment Claim (Cause of Action VIII) Fails as a Matter of Law .........................................................................................34

F.      The State Court Granted Summary Judgment on Plaintiffs' Business Disparagement and Tortious Interference Claims (Cause of Action V) Because Plaintiffs Have No Evidence to Support Those Claims .........................35

G.      Plaintiffs' Claims Are Barred by the Statute of Limitations.................................38

        1.      Plaintiffs knew or should have known that the alleged "promise" was not a promise more than four years prior to filing suit ........................................................................................38

        2.      The discovery rule does not apply to save plaintiffs' other claims ..........................................................................................39

VI. Conclusion ........................................................................................................40

Table of Authorities

<u>Cases</u>

*American Tobacco Co. v. Grinnell*,
    951 S.W.2d 420 (Tex. 1997).................................................................. 16, 40

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986).............................................................................. 14

*Anglo-Dutch Petroleum Intern. v. Smith*,
    243 S.W.3d 776, (Tex. App. – Houston [14 Dist.] 2007, pet. denied) ............................ 26

*Aquaplex, Inc. v. Rancho La Valencia*,
    297 S.W.3d 768 (Tex. 2009)................................................................... 15

*Barrand, Inc. v. Whataburger*,
    214 S.W.3d 122(Tex. App. – Corpus Christi 2006, pet. denied)................................ 21, 22

*Cavaness v. General Corp.*,
    283 S.W.2d 33 (Tex. 1955)..................................................................... 29

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986).............................................................................. 14, 31

*Collins v. Allied Pharmacy Management*,
    871 S.W.2d 929 (Tex. App. – Houston [14 Dist.] 1994, no pet.)................................ 23, 24

*Computer Associates Intern., Inc. v. Atlai, Inc.*,
    918 S.W.2d 453 (Tex. 1996)................................................................... 40

*Dworschak v. Transocean Deepwater Drilling, Inc.*,
    352 S.W.3d 191 (Tex. App. – Houston 2011, no pet.) .................................... 37, 38, 39

*Fluor Enters v. Conex Int'l. Corp.*,
    273 S.W.3d 426 (Tex. App. – Beaumont 2008, pet. denied)................................. 36

*Forbes Inc. v. Granada Biosciences, Inc.*,
    124 S.W.3d 167 (Tex. 2003).................................................................... 37

*General Insulation Co. v. King*,
    No. 14-08-00633-CV, 2010 WL 307952 (Tex. App. – Houston [14 Dist.] Jan. 26, 2010)
    ............................................................................................. 30

*Gillum v. Republic Health Corp.*,
    778 S.W.2d 558 (Tex. App. – Dallas 1989, no writ) ........................................ 16, 18, 19

*Gilmartin v. KVTV Channel 13,*
    985 S.W. 2d 553 (Tex. App. – San Antonio 1998, no pet.)............... 15, 16, 18, 19, 21, 23

*Grable & Sons Metal Prods. v. Darue Engineering & Mfg.,*
    545 U.S. 308 (2005)........................................................................................ 4, 14

*Grant Thornton LLP v. Prospect High Income Fund,*
    314 S. W. 3d 913 (Tex. 2010)........................................................................ 15

*Green Garden Packaging Co. v. Schoenmann Produce Co.,*
    No. 01-09-00924, 2010 WL 4395448 (Tex. App. – Houston [1 Dist.] Nov. 4, 2010) ..... 31

*Hedenfels Bros. v. City of Corpus Christi,*
    832 S.W.2d 39 (Tex. 1992)........................................................................... 33

*Hill v. Heritage Resources, Inc.,*
    964 S.W.2d 89 (Tex. App. – El Paso 1997, pet. denied) ................................. 36

*Hurlbut v. Gulf Atlantic Life Ins. Co.,*
    749 S.W.2d 762 (Tex. 1987)......................................................................... 38

*IBP, Inc. v. Klumpe,*
    101 S.W.3d 461 (Tex. App. – Amarillo, 2001) ........................................ 30, 31

*J.C. Kinley Co. v. Haynie Wire Line Service,*
    705 S.W.2d 193 (Tex. App. 1st Dist. 1985) ............................................. 28, 29

*Kline v. O'Quinn,*
    874 S.W.2d 776 (Tex. App. Houston [14 Dist.] 1994, writ denied)................. 26

*Milton v. Tex. Dep't of Criminal Justice,*
    707 F.3d 570 (5th Cir. 2013) ...................................................................... 14

*Ortiz v. Collins,*
    203 S.W.3d 414 (Tex.App. – Houston [14 Dist.] 2006)................................. 16

*Parker Barber and Beauty Supply v. The Wella Corporation,*
    No. 03-04-00623-CV 2006 WL 2918571  (Tex. App. – Austin 2006) ..................... 28, 30

*Pepi Corp. v. Galliford,*
    254 S.W.3d 457 (Tex.App. – Houston [1st Dist] 2007, pet. denied)................. 33

*Plotkin v. Joekel,*
    304 S.W.3d 455 (Tex.App. – Houston [1 Dist.] 2009, pet. denied) ............... 25, 27

*Priddy v. Rawson,*
    282 S.W.3d 588 (Tex. App. – Houston [14 Dist.] 2009, pet. denied) ............ 24

iv

*Protocol Technologies, Inc. v. J.B. Grand Canyon Dairy, L.P,*,
    406 S.W.3d 609 (Tex. App. – Eastland 2013, no pet.) ..................................................... 34

*Rankin v. Naftalis*,
    557 S.W.2d 940 (Tex. 1977) .................................................................................. 27

*S.V. v. R.V.*,
    933 S.W.2d 1, (Tex. 1996) .................................................................................... 41

*Samples Exterminators v. Samples*,
    640 S.W.2d 873 (Tex. 1982) .................................................................................. 35

*San Antonio Masonry & Tool Supply v. Esptein & Sons Intern.*,
    281 S.W.3d 441 (Tex. App. – San Antonio 2005, no pet.) ................................................ 33

*Schlumberger Tech. Corp. v. Swanson*,
    959 S.W.2d 171 (Tex. 1997) .................................................................................. 25

*See United States v. Taylor.*,
    33 F.2d 633 (5th Cir. 1964) ................................................................................... 14

*Shaw v. Palmer*,
    197 S.W.3d 856 .......................................................................................... 18, 21

*Simulis LLC v. General Elec. Capital Corp.*,
    No. 14-06-00701, 2008 WL 1747483  (Tex. App. – Houston [14 Dist.] Apr. 17, 2008, no
    pet.) ...................................................................................................... 19, 24

*Stum v. Stum*,
    845 S.W.2d 407(Tex. App. – Fort Worth, 1992) ........................................................... 27

*Sullivan v. Leor Energy, LLC*,
    600 F.3d 542 (5th Cir. 2010) (applying Texas law) ................................................... 34, 35

*Texas Utils. Elec. Co.*,
    995 S.W.2d 647 (Tex. 1999) .................................................................................. 29

*Tricon Tool & Supply, Inc.*,
    226 S.W.3d 494 (Tex. App. – Houston [1st Dist] 2006, pet. denied) .............................. 34

*Wagner & Brown Ltd., v. Horwood*,
    58 S.W.3d 732 (Tex. 2001) ................................................................................... 41

*Walker v. Comdata Network, Inc.*,
    730 S.W.2d 769 (Tex. App. – Dallas 1987) ................................................................ 15

*Wal-Mart Stores. v. Sturges*,
    52 S.W.3d 711 (2001) ........................................................................................ 35

*Wohlfahrt v. Holloway*,
    172 S.W.3d 630 (Tex.App. – Houston [14 Dist.] 2005, pet. denied) .............................. 33

Statutes

28 U.S.C. § 1331 ................................................................................................................. 4, 14

28 U.S.C. § 1367 ................................................................................................................. 4, 14

Tex. Bus. & Com. Code § 26.01 ............................................................................................ 21

Tex. Civ. Prac & Rem. Code § 16.004 .................................................................................. 39

Rules

Federal Rule of Civil Procedure 56(a) ............................................................................... 1, 14

Texas Rules of Civil Procedure 166a(c) ................................................................................. 3

Texas Rules of Civil Procedure 166a(i) .................................................................................. 3

<u>Other Authorities</u>

Restatement (Second) of Torts § 632 (1977) ......................................................................... 38

The Court should grant summary judgment under Federal Rule of Civil Procedure 56(a) as to all claims brought against the Quanta entities and John R. Colson (collectively "Quanta") by plaintiffs Patrick Devaney and his company Trident Ventures, Inc.

I.

Introduction and Summary of the Argument

Devaney worked for Quanta for more than eight years as a paid consultant.  He used his company Trident Ventures to bill Quanta each month for his consulting work. Quanta paid each invoice, which totaled approximately $3 million.  Eventually that consultancy ended.  When it did, Devaney submitted a final invoice.  Unlike the previous 100 or so invoices, the final one had something extra – a demand for an $8 million bonus.

Quanta had no written or oral agreement entitling plaintiffs to any bonus, much less a bonus of $8 million.  Quanta refused to pay the requested bonus and this suit followed.  During litigation, plaintiffs changed their story.  They have abandoned the $8 million bonus invoice and instead claim something entirely different.

Plaintiffs' case now teeters on a fantastically illusory and indefinite oral promise allegedly made more than 50 times over an 8-year period by the CEO of Quanta Services that supposedly would result in an *undetermined* plaintiff (plaintiffs aren't clear which one) being part of an *undetermined* employee pool that would receive an *undetermined* ownership interest at an *undetermined* time in an *undetermined*, never-created Quanta spin-off company that would somehow entitle plaintiffs to an *undetermined* percentage of *all* profits earned in perpetuity on *any* government or international project performed by *any* of Quanta Service's 30 or so operating subsidiaries.

Putting aside the nonsensical nature of plaintiffs' liability theory, the supposed promise which forms the basis for their fraud-based claims is, even if it were made (which it was not), unenforceable as a matter of law. ***The oral promises alleged – undetermined parties, ownership percentages, profit share percentages, and timing – are too uncertain and indefinite to constitute an enforceable promise***. Plaintiffs, therefore, cannot meet their burden of proving reasonable or justifiable reliance as to Causes of Action I, II and VII.

Plaintiffs' remaining claims also fail as a matter of law:

- Plaintiffs cannot recover for breach of fiduciary duty or defalcation (Cause of Action IV) because there is no evidence of a fiduciary relationship.

    o Plaintiffs refused under oath to provide any facts to support the existence of a formal fiduciary relationship.

    o Plaintiffs admit having no prior relationship with Quanta at the time the alleged false representations were made, which dooms any claim of an informal fiduciary relationship.

- The negligence and tortious breach of confidentiality claims (Cause of Action III) fail because plaintiffs cannot prove the existence of any duty of confidentiality between Quanta and plaintiffs, and plaintiffs cannot – after more than 18 months of discovery – identify a single piece of confidential information that Quanta allegedly mishandled.

- The claim for quantum meruit and unjust enrichment (Causes of Action VI and VIII) fail because plaintiffs willingly submitted to Quanta over an 8-year period consulting invoices seeking payment on a fixed daily rate, which Quanta timely paid.

- The tortious interference with business relations and business disparagement claims (Cause of Action V) fail because plaintiffs have no evidence of any business disparagement or independently wrongful or tortious conduct committed by Quanta.

Even if plaintiffs had viable claims, the statute of limitations would bar them because more than four years have passed since they knew or should have known that the alleged promise which forms the basis for their claims was false.

II.

Procedural History

Plaintiffs filed suit against Quanta in the District Court of Harris County, Texas, 333rd

Judicial District on December 31, 2012.

State Court Proceedings

- After nearly one year of discovery in which Quanta produced more than 60,000 pages of documents and plaintiffs deposed Quanta's current CEO and its former CEO, Quanta moved for summary judgment on all claims against it on December 27, 2013.  Ex. 13.

-  Quanta moved for traditional summary judgment under TRCP 166a(c) on plaintiffs' fraud, quantum meruit, and unjust enrichment claims, asserting that those claims were legally defective.  Quanta moved for no-evidence summary judgment on plaintiffs' tortious interference with business relations, business disparagement, and breach of fiduciary duty claims pursuant to TRCP 166a(i).  *Id.*

- Plaintiffs agreed that they did not need any additional discovery to respond to the summary judgment and filed a response on February 21, 2014.

- At the February 28, 2014 summary judgment hearing, Texas State District Judge Joseph Halbach granted on the record Quanta's motion for summary judgment on plaintiffs' business disparagement and tortious interference claims (Cause of Action V), rendering judgment for Quanta on those claims.  Ex. 16 at 28:12-25.

- On March 14, 2014, before Judge Halbach ruled on the remainder of Quanta's motion for summary judgment, plaintiffs filed a Second Amended Petition.  That petition added claims for promissory estoppel, defalcation, negligence, and tortious breach of confidentiality against all defendants.

- Plaintiffs' negligence and tortious breach of confidentiality claims alleged, for the first time, that Quanta breached duties of confidentiality under the National Industrial Security Program, Executive Order 12958, related to classified information belonging to the United States and foreign governments.  Plaintiffs also claimed that Quanta breached its duties of confidentiality related to top-secret, classified contracts with the United States.  Ex. 15 ¶ 42-46.

Federal Court Proceedings

• Quanta removed the case to the United States District Court for the Southern District of Texas on March 26, 2014.

• Plaintiffs filed a motion to remand on June 4, 2014.  Dkt. No. 15. Quanta responded on June 13 that the district court has subject matter jurisdiction over plaintiffs' negligence and breach of confidentiality claims under 28 U.S.C. § 1331 because those claims arise under federal law – *see Grable & Sons Metal Prods. v. Darue Engineering & Mfg.*, 545 U.S. 308, 309 (2005) - and the court has supplemental jurisdiction over plaintiffs' remaining claims pursuant to 28 U.S.C. § 1367. Dkt. No. 22.  Plaintiffs' motion to remand is pending.

• On May 19, 2014, defendants filed a supplemental motion for summary judgment, which the court struck with the following notation: "Please refile original motion for summary judgment in Federal Court." Dkt. No. 21.

III.

Statement of Undisputed Facts

Quanta Services, Inc. is an S&P 500 company that specializes in design, installation, and maintenance for the electric power, renewable energy, and natural gas pipeline industries.  Ex. 22 at 8-9.  Quanta's founder, John R. Colson, served as its CEO from the company's inception in 1997 to May 2011.  Ex. 1 at 61:12-18.

For more than eight years, plaintiff Patrick Devaney served as an outside consultant for Quanta Services, Inc.  *Id.* at 13:7-15.  Devaney is a self-avowed, experienced businessperson with a "strong financial and management background." Ex. 15, ¶ 2.  He issued invoices through his company, Trident Ventures, Inc.  Ex. 8.  In his role as paid consultant, Devaney assisted with the growth of Quanta's international and government business through two Quanta subsidiaries, Quanta International Limited ("QIL") and Quanta Government Services ("QGS").  *See id.*

The relationship began in 2004 when Quanta's then CEO, John Colson, retained Devaney to assist Quanta with bidding for work on a project to reconstruct Iraqi power transmission lines. Ex. 1 at 67:1-6.

4

For his consulting work in Iraq, Devaney invoiced Quanta at a rate of $1,500 per day. Ex. 2. His invoices identified the "Project" as the "Iraq Proposal" and stated that they were for "professional services rendered by Patrick Devaney for Quanta Government Solutions." *Id.* Quanta did not win any work in Iraq, but paid the invoices Devaney prepared and submitted.

A.     Plaintiffs Submitted 100+ Consulting Invoices to Quanta over Eight Years – and None Mentioned a Promised Carried Interest

By the spring of 2004, Quanta began to explore a continuing relationship for Devaney in developing international and government business for Quanta through QIL and QGS. Ex. 1 at 5-10. Quanta and Devaney eventually settled on a consulting arrangement under which Devaney received a daily consulting fee invoiced monthly along with reimbursement of all his Quanta-related expenses. Ex. 3.

Devaney's role with Quanta was primarily a business development one. Ex. 1 at 13:17-25. In connection with his responsibility to develop international and government business, Quanta issued Devaney business cards identifying him as the President of QIL and QGS. *Id.* at 13:17-25. Plaintiffs allege that those cards somehow represent a written "promise of adequate compensation for [his] services and the services of Trident Ventures." Ex. 6 at 43:1-6.[1]

Through their consultancy, plaintiffs endeavored to bring Quanta business that its operating units could perform. Ex. 1 at 46:7-25. John Colson explained during his deposition that Quanta's plan for QIL and QGS was that they would be "business development units" that would develop, but not perform, business. *Id.* Quanta performs a significant portion of its business through subsidiary operating units, such as Underground Construction, PAR Electric,

---

[1] Quanta issued those business cards because according to Devaney he could not develop business in the Middle East unless he carried a significant title. Ex.1 at 114:21-115:2. John Colson testified that although Devaney carried cards identifying him as President of QIL and QGS, he, as a non-employee paid consultant, "did not have the authority as a normal president would have because he was not an employee." *Id.* at 13:17-25. Devaney admits he was not a Quanta employee. Ex. 6 at 23:19-23.

Dashiell Corporation, Infrasource, and others.  Ex. 6 at 136:3-19.  Plaintiffs pursued many leads, but few of the projects developed by Devaney ended up resulting in profitable work for Quanta. Ex. 1 at 46:7-25.

Quanta originally paid Devaney $1,500 per day, but in June 2004, the parties agreed that Devaney would submit "contract fee forms" at a daily rate of $1,000 per day for five days a week.  Ex. 3.  Throughout their relationship with Quanta, plaintiffs were represented by counsel. Ex. 4; Ex. 5.

Plaintiffs claim that at a September 16, 2004 meeting Quanta approved a written business plan that included 15% carried interest employee stock ownership plan for employees of QIL and QGS.  Ex. 6 at 97:23-98:3; 147:1-12.  Plaintiffs have not produced any paper from September 2004 evidencing a business plan or any approval of such a plan.  According to Devaney, his subjective "expectation was that [he] would have at least the largest share of that amongst the team," despite the fact that neither he Trident were Quanta employees and neither had an employment or consulting contract altering their at-will status.  *Id.* at 147:1-12.  He alleges that his promised interest would entitle him to a share of all profits any Quanta operating subsidiary earned on any government or international work.  *Id.* at 167:13-16.  A pre-meeting agenda for the September 16 meeting prepared by Devaney does not reflect any discussion or request for approval of any kind of employee stock ownership plan.  *See* Ex. 7; Ex. 6 at 253:20-254:25.

No other document shows or suggests that Quanta ever approved a carried interest for plaintiffs.  And that includes the 100+ invoices plaintiffs submitted to Quanta.  Every invoice plaintiffs prepared and sent to Quanta over an eight-year period described the services performed, indicated the daily rate charged, and was submitted by Devaney for either Trident or one of its subsidiaries:

Quanta Services
1360 Post Oak Blvd. Ste. 2100
Houston, TX 77056

**Project:  Quanta Government Solutions**

For professional services rendered by Patrick Devaney for the establishment of Quanta
Services International and Government Business.

**Rate:  $1,000 per day**

**Days**

| | | |
|---|---|---|
| 11-JUL to 15-JUL | = | 5 Days |
| 18-JUL to 22-JUL | = | 5 Days |
| 25-JUL to 29-JUL | = | 5 Days |

**Total days:  15 days @ $1,000 per day**

**Total:  $15,000**

(via e-mail)

**Patrick Devaney**
For Trident Ventures, Inc.

8/13/05

**John Colson**

Ex. 8.

Quanta Services CEO John Colson (and later Colson's successor as Quanta CEO Jim
O'Neil) approved plaintiffs' invoices.  Ex. 8.  Quanta paid every invoice submitted by plaintiffs
during the entire eight-year relationship, except for the last one, which inexplicably requested an
$8 million "completion bonus."  Ex. 12.  Even on that invoice, Quanta paid the daily rate and
expenses; it did not pay the unexplained, not-agreed-to $8 million bonus.  *See* Ex. 20.

B.      Plaintiffs' Contemporaneous Emails Undercut Their Claim of a Promised Carried Interest

Devaney never made any written claim to Quanta that he had been promised any additional compensation for the consulting services he had rendered through Trident – even when he tried to receive his requested multi-million dollar bonus.  To the contrary, Devaney's emails during the eight-year period when plaintiffs provided consulting work to Quanta evidence that no promise of additional compensation of any type had been made by Quanta to plaintiffs.

In 2010, while Quanta was pursuing a proposed Kuwait power line-transmission reconstruction project for the Kuwait Minister of Electricity and Water that did not result in any award to Quanta (the "Kuwait MEW proposal"), Devaney wrote Quanta CEO Colson a memo in which he stated that he _hoped_ Colson might "agree-to-agree" to additional compensation:

  - I can tell you that the fast-track we are on is unprecedented.  The level's and frequency of the Minister's we have had is unprecedented.  The pace of the Contract being delivered - regardless if they put it out for a 30-day RFP - is unprecedented. The end-result that I am delivering to Quanta is, in my opinion, beyond the day-to-day scope of my Consultancy - I hope we can "agree-to-agree" on fair compensation to me for this important opportunity;

Ex. 9 at 2.  Devaney makes no reference to having been promised a carried interest.

In connection with that same deal, Devaney sent an email on November 25, 2010 to Quanta COO O'Neil and Colson, asking _prospectively_ for a discussion about a bonus and performance fee:

8

**From:** Devaney, Patrick
**Sent:** Thursday, November 25, 2010 10:42 AM
**To:** O'Neil, Jim
**CC:** Colson, John
**Subject:** RE: MEW Substation and Transmission Detailed Project Timelines

Jim

I can confirm that your information has been received by the MEW, as you requested, and without notification to Rawase

I want to be helpful here - I feel stuck in the middle and I presume you are moving in this new direction under advise of counsel?

Let's get back to optimism - and have a discussion about a bonus and performance fee for me when Quanta closes this business!!!!

Things could be alot worse than contemplating at profit that, I am led to believe, could be in excess of $500 million

Ex. 10 at 1-2.

These written statements from plaintiffs in 2010 come six years *after* plaintiffs were allegedly first promised an equity interest in all profits earned by any Quanta Services operating subsidiary for government or international work.

      C.      <u>Plaintiffs Made No Demand for a Promised Carried Interest When Quanta Ended the Consulting Relationship</u>

Quanta's current President and CEO Jim O'Neil terminated Devaney's consulting relationship in 2011, but permitted plaintiffs to continue to submit invoices through April 2012. Ex. 11; Ex. 25 at 137:24 – 138:7.  On April 23, 2012, Devaney emailed John Colson and Jim O'Neil about agreeing on a potential completion bonus:

> I thought you might have come to terms with a reasonable 'competition bonus' for the various govt programs I have been involved in.

Ex. 11.

Once again, Devaney did not mention any promised ownership interest in Quanta's international or government work.  Rather, he used conditional language – "might" – to describe a future, undefined payment he hoped to receive from Quanta.

9

Devaney submitted a final invoice to Quanta on May 8, 2012.  That invoice was similar to his other invoice, except it contained an additional line item for a "Completion bonus" of $8 million:

**Rate:  $1,000 per day**

**Days**
31-MAR to 24-APR            =            25 Days

**Total days:  25 days @ $1,000 per day = $25,000**

**Plus Middle East administrative services & miscellaneous expenses: $2,500**

**Total:  $27,500**

2.  **Completion Bonus:  $8,000,000**

Ex. 12 at 2.

Quanta did not pay the bonus (but did pay the standard daily rate for the time period reflected on the invoice), Ex. 20, and heard nothing at all from plaintiffs about their claimed $8 million "completion bonus" until plaintiffs filed this lawsuit.

      D.      <u>Plaintiffs First Claim a Promised Carried Interest Eight Years Later</u>

Plaintiffs filed suit against Quanta on December 31, 2012, nearly nine years after Devaney's consulting relationship with Quanta began.  They assert a multitude of causes of action – most of which arise from their claim that Quanta committed various kinds of fraud by promising plaintiffs an ownership interest (through a partnership, joint venture, or otherwise) in Quanta's international and government business.  *See generally* Ex. 15.  Plaintiffs also claim that Quanta promised Devaney that he would be president of Quanta's international and government businesses, that he "would receive the benefits and equity interests that go with such a venture,"

and that Quanta falsely represented to plaintiffs that it had the "financial wherewithal" to perform the business plaintiffs developed.  *Id.*, ¶¶ 20, 24, 30.[2]

During his deposition Devaney claimed his unspecified ownership interest in Quanta's international and government business subsidiaries arose from a vaguely defined "business plan" that included an *employee* carried interest or profit sharing plan. But *neither Devaney nor Trident was ever a Quanta employee*.  Ex. 6 at 23:19-23.  Moreover, no written contract or agreement supports this new claim. Nor could it, because any such arrangement would need to be approved by the board and disclosed in Quanta's public filings.

No such plan has ever been approved by either the Quanta board.  No such plan has ever been disclosed in any public filing by Quanta ever, much less during the eight years Devaney worked for the company. Ex. 1 at 204:4-205:9.  Nonetheless, Devaney now claims he is entitled to some unspecified ownership interest as a bonus because almost ten years ago (in 2004) he allegedly suggested the formation of an employee carried interest incentive plan in some "business plans" that Devaney claims were eventually "approved."   Ex. 6 at 131:5-13.

Rather than entitling him to a bonus under this unwritten and undisclosed incentive plan, this "employee-carried-interest bonus," Devaney now claims, was due to a group of Quanta employees.  In fact, Devaney claimed that ten members of his "team" were entitled to participate in the plan and said that he could not say for sure what his actual share of any such bonus pool would be.  *Id.* at 157:17-24

In support of his claims, Devaney testified only that his alleged business plan – which is nothing more than a one-page excel spreadsheet – had been orally "approved" and that the

---

[2] Plaintiffs also initially claimed in an interrogatory response that they invested $1 million in a joint venture of partnership for the development of international business with Quanta.  Ex. 23 at 3.  They served an amended interrogatory response just before Devaney's deposition and have since completely abandoned that claim.  Ex. 24.

business cards identifying him as president of QIL and QGS constituted a "promise of adequate compensation for [his] services and the services of Trident Ventures." *Id.* at 43:1-6. He stated:

> Q:     Other than the two business cards, what other promises in writing did John Colson make to you?
>
> A:     As I said, counselor, he made many promises in writing and orally over the period and I can't recall every instance.
>
> Q:     I'm asking you to recall – you can't recall as you sit here today, any other instance other than the two business cards he gave you?
>
> A:     I believe he endorsed my business plan several times which included several types of promises inside that plan and the revised plan and updated plans. He made promises about businesses that we were pursuing, projects we were pursuing, travel. Promises that he made to others in my presence within the government internationally, with other government leaders internationally, government heads of businesses overseas, there was countless promises.

*Id.* at 43:7-23.

Colson's alleged approval and "endorsement" of these so-called business plans does not and cannot give rise to liability for fraud, breach of fiduciary duty, or anything else. Plaintiffs have nothing in writing that agrees to or even acknowledges such arrangements. But approximately 100 specific invoices prepared by plaintiffs detail what, in fact, Quanta owed. The final invoice that requests an $8 million bonus was never agreed to, owed by, or paid by Quanta.

E.     <u>Plaintiffs' Excel Spreadsheet Does Not Evidence a Promise for a Carried Interest</u>

Devaney admits there is no agreement between plaintiffs and any Quanta entity regarding plaintiffs' proposed business plan including the employee carried interest. *Id.* at 241:1-6; 396:12-16. The only written document Devaney can point to is not a business plan at all but rather a single page draft presentation with a series of assumptions from spring 2005 titled "Quanta International 6- May Update." Ex. 14. Devaney admitted that Quanta never

consummated what he calls "the business plan." Ex. 6 at 241:1-6.  Plaintiffs claim that Quanta "kept kicking the can down the road, saying go get the business . . . when we get the business, we're going to execute the model.  *Id.*

The last two pages of the "Update" contain excerpts from an unidentified spreadsheet titled:   "Model" and "Assumptions."  Ex. 14 at 8-9.  The document on its face makes clear it is some draft financial planning model that includes varying annual assumptions of revenue and expenses for two Quanta subsidiaries.  It is not even clear that the last two pages go with the rest of the presentation – the first of the two pages with the model is dated July 8, 2005.  *Id.* at 8. Devaney did not know who even drafted the spreadsheet that he now calls a "business plan."  Ex. 6 at 230:7-8.

Nothing indicates that the spreadsheet or any plan to create a carried percentage was approved by anybody at Quanta, that it was presented to Quanta's board of directors or its compensation committee, or that it was disclosed to the public or Quanta's operating company subsidiaries.  Nor are there any documents specifying who was entitled to participate in the plan, what percentage plaintiffs were entitled to (if any) what level of profit would have "triggered" the plan, whether Quanta's operating subsidiaries could opt out of the plan, whether the plan existed in perpetuity, whether it could be revoked, or whether any employee's right to participate was contingent upon continued at-will employment or vested over time.

Rather, the record shows that plaintiffs continued to submit invoices for their services, Quanta paid every single one except the last one, and plaintiffs never once complained about any additional compensation until after Quanta ended their relationship.

IV.

Legal Standard and Standard of Review

Federal Rule of Civil Procedure 56(a) applies to Quanta's motion for summary judgment. *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  In resolving summary judgment, the court will consider whether there is sufficient evidence upon which a jury could return a verdict for the non-moving party, and "[c]onclusory allegations, unsubstantiated assertions, or only a scintilla of evidence are insufficient to create a genuine issue of material fact" and will not defeat a motion for summary judgment.  *Milton v. Tex. Dep't of Criminal Justice*, 707 F.3d 570, 572 (5th Cir. 2013) (internal quotation marks omitted).

This Court has subject matter jurisdiction over plaintiffs' negligence and breach of confidentiality claims under 28 U.S.C. § 1331 and the Supreme Court's decision in *Grable & Sons Metal Prods. v. Darue Engineering & Mfg.*, 545 U.S. 308, 309 (2005), because those claims arise under federal law.[3]  The court has supplemental jurisdiction over plaintiffs' remaining claims pursuant to 28 U.S.C. § 1367.  To the extent that plaintiffs allege that Quanta breached any duties of confidentiality pursuant to an allegedly secret and classified contract pertaining to national security, federal law governs that claim.  *See United States v. Taylor*. 33 F.2d 633, 639 (5th Cir. 1964) ("It is clear that federal law will control contracts between private parties if there is sufficient federal interest.").[4]

---

[3] Plaintiffs filed a motion to remand based on a lack of subject matter jurisdiction on June 4, 2014.  Dkt. No. 15. Quanta responded on June 13, 2014.  Dkt. No. 22.  Plaintiffs' motion is currently pending.

[4] The parties otherwise agree that Texas law applies to plaintiffs' claims.  *See* Dkt. No. 15 at 5.

V.

Argument

A.      Plaintiffs' Fraud, Promissory Estoppel, and Negligent Misrepresentation Claims
(Causes of Action I, II and VII) Fail as a Matter of Law

Plaintiffs' fraud, fraud in the inducement, promissory fraud, promissory estoppel, fraud
by nondisclosure and negligent misrepresentation claims are too vague and indefinite to support
reasonable reliance.

1.      The fraud-based claims all require Plaintiffs to prove they justifiably relied on the
alleged promises from Quanta

In order to prove fraud, a plaintiff must show that: (1) the defendant made a
representation to the plaintiff; (2) the representation was material; (3) the representation was
false; (4) when the defendant made the representation the defendant knew of the representation
was false or made the representation recklessly, as a positive assertion, and without knowledge
of its truth; (5) the defendant made the representation with the intent that the plaintiff act on it;
(6) the plaintiff relied on the representation; and (7) the representation caused the plaintiff
injury." *Aquaplex, Inc. v. Rancho La Valencia*, 297 S.W.3d 768, 774 (Tex. 2009).[5]

The reliance requirement is a "central element" of any fraud, promissory estoppel or
negligent misrepresentation claim.  *Gilmartin v. KVTV Channel 13*, 985 S.W. 2d 553, 558 (Tex.
App. – San Antonio 1998, no pet.); *see Grant Thornton LLP v. Prospect High Income Fund*, 314
S. W. 3d 913, 923 (Tex. 2010) (stating that justifiable reliance is also an element of negligent
misrepresentation).

---

[5] Promissory fraud is a type of fraud involving "the making of a statement of intended future action, coupled with
the affirmative intent not to perform as represented."  *Walker v. Comdata Network, Inc.*, 730 S.W.2d 769, 771 (Tex.
App. – Dallas 1987).  Plaintiff must show that when the defendant made the representation, he had no intention of
performing.  *Id.*

A plaintiff's reliance on alleged promises must be both reasonable and justified. *Gilmartin*, 985 S.W. 2d at 558.[6] Reliance on a promise is reasonable only when the promise is sufficiently certain and definite to create a binding obligation on the parties; it is not reasonable for plaintiffs to rely on promises that are too vague or uncertain to create a contract. *Id.* at 558; *see also Gillum v. Republic Health Corp.*, 778 S.W.2d 558, 570-71 (Tex. App. – Dallas 1989, no writ). The promise that forms the basis of plaintiffs' claims does not meet this standard.

       2.   <u>Plaintiffs cannot show reasonable or justifiable reliance on the alleged promises</u>

Assuming *arguendo* that Quanta promised plaintiffs that: (1) they were entitled to an ownership or profit sharing interest in Quanta's international and government business; (2) Devaney would be President of a Quanta subsidiary and would receive the "benefits" that go along with such a position; and (3) Quanta had the financial wherewithal to deliver on all of the business that plaintiffs were trying to develop, plaintiffs still would not be entitled to recover on their fraud and misrepresentation-based claims because they cannot show as a matter of law that reliance on any of those oral promises was reasonable or justified.

       a.   <u>The alleged "promise" of a carried interest and profit sharing is too vague to support reliance</u>

Plaintiffs could not have relied on the alleged promises of an ownership interest as a matter of law because they are too vague and indefinite to support reasonable reliance. Devaney admitted that there was <u>*no agreement*</u> on what percentage of the alleged 15% employee carried-

---

[6] Texas courts, including the Supreme Court of Texas, have repeatedly used the terms "reasonable" and "justified" interchangeably, and binding precedent requires that a plaintiffs' reliance be reasonable and justified to support a claim of fraud. *See American Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 436 (Tex. 1997) ("Just as with affirmative misrepresentations, the allegedly defrauded party must have reasonably relied on the silence to his detriment."); *see also Ortiz v. Collins*, 203 S.W.3d 414, 421 (Tex.App. – Houston [14 Dist.] 2006) ("Ortiz sued appellees for fraud, negligent misrepresentation, and promissory estoppel based on their alleged misrepresentations during the negotiation process . . . all three claims share the common element of reliance. This reliance must be reasonable and justified.").

interest-profit-sharing plan he would receive, and that he and Quanta *did not reach agreement* on

what financial thresholds would have to be met before Quanta triggered the plan:

> Q:    How much of the 15 percent were you promised that you were going to be
> receiving?
>
> A:    *I never came up with that number.*  I spoke to John [Colson] about it.  I
> said it  would depend on how many people were in the pool.  But I did
> expect to have the largest in the entire team.  Might have been five
> percent, might have been eight percent.  *I don't know.*
>
> ***
>
> Q:    How much business needed to be brought in before the consummation of
> the business model would take place?
>
> A:    *I'm not sure that they had a specific number.  It was – it was an implied
> number*, and the business that we were contemplating, again, about $3
> billion of potential business over the years, all that business was right in
> Quanta's wheelhouse, so to speak.  And looking at the balance sheet and
> income statements of other Quanta companies doing over 200 million,
> 150, 200 million a year in revenue, you'll see that the hurdles include 50
> million or more in capital equipment, obvious 150, $200 million in
> revenue, of that revenue, obviously an expectation of a certain amount of
> profit.
> And that profit would theoretically be reinvested in the capital equipment
> of 50 million.  So again, it's a – there's a lot of factors; but the promise
> and the – the expectation of John was for me to go out and get those big
> jobs so that there wasn't a financial burden per se on Quanta and their
> earnings – domestically.

Ex. 6 at 157:17-24; 242:15-243:12 (emphasis added).

Devaney further testified that other key terms necessary to trigger the promised carried

interest had not been defined, including: (1) the amount of profit necessary before the plan was

consummated; (2) who would determine when the plan should be consummated; and (3) the time

frame in which the plan would be consummated.  *Id.* at 243:13-245:20.  He also never addressed

how either he (or Trident for that matter), as a consultant, would be allowed to participate in an

*employee* profit sharing plan when neither Devaney nor Trident was a Quanta employee. *Id.* at 32:5-33:1.

Courts have repeatedly found that such vague and undefined promises are not enforceable as a matter of law.  In *Shaw v. Palmer*, 197 S.W.3d at 856, the court held that the defendant was entitled to summary judgment on the plaintiff's breach of contract case when the plaintiff alleged an oral agreement that she would "take less money [in salary] in exchange for bonuses based on an increase in profits" and that the bonus would be "based on an amount that we both thought was fair," because the alleged promise was too uncertain to create a binding obligation.  *Id.* at 856-57.  "[A]t most [the parties] had a contingent agreement to agree."  *Id.* at 856.  As the court noted, "if an alleged agreement is so indefinite as to make it impossible for the court to fix the legal obligations and liabilities of the parties, it cannot constitute an enforceable contract."  *Id.* at 856.

Here, the Court cannot fix the legal obligations and liabilities of the parties based on plaintiffs' allegations – Devaney himself could not even do so during his deposition.  Indeed, plaintiffs' own attorneys could not point to any specific statement of the alleged "promises" when pressed by Judge Halbach during the February 28, 2014 summary judgment hearing.  *See e.g.* Ex. 16 at 42:13-43:20; 45:18-46:12.  It matters not that *Shaw* involved a breach of contract claim and plaintiffs here disavow any contract or agreement with Quanta about the promise – an enforceable promise, as explained below, still requires certainty.

When an alleged promise is too indefinite to constitute an agreement, courts have repeatedly held that reliance on any such promise is not reasonable and justified as a matter of law.  *See Gilmartin*, 985 S.W.2d at 558; *Gillum*, 778 S.W.2d at 570 (affirming judgment as a

matter of law on fraud and promissory estoppel claims based on court's determination that "no express or implied contract existed, in that the promises made were too vague and indefinite").

The facts alleged by plaintiffs are analogous to those in *Gilmartin*.  In that case, the plaintiff claimed that an oral agreement reached with his employer provided that he would be employed on a year-long employment contract that would automatically renew for successive one year terms so long as his work was satisfactory.  985 S.W.2d at 558.  The plaintiff also alleged that he agreed to terms on salary, bonuses, vacation time and possible future raises, but the court granted summary judgment for the employer on the plaintiff's breach of contract claim because the promises alleged were not sufficiently certain to create an employment contract.  *Id.*

> For the same reason, the court dismissed the fraud and promissory estoppel claims:
>
> we have already concluded that the terms of the oral promises were too indefinite to constitute a modification of at-will employment. . . .  We hold that Gilmartin's pleadings do not indicate any promises or assurances specific or definite enough upon which reliance can be reasonably made.  Consequently we affirm the granting of the motion for summary judgment on Gilmartin's fourth and fifth points of error.

*Id.* at 560.

Other courts have followed suit by holding that vague and indefinite promises cannot support reasonable reliance as a matter of law. *See Gillum*, 778 S.W.2d at 568-70 (affirming summary judgment where hospital's alleged promises to doctor to upgrade facilities and raise the level of patient care were too indefinite as a matter of law); *Simulis LLC v. General Elec. Capital Corp.*, No. 14-06-00701, 2008 WL 1747483 at *2 (Tex. App. – Houston [14 Dist.] Apr. 17, 2008, no pet.) (affirming summary judgment on promissory estoppel claim because "relying on a vague indefinite promise of future business is unreasonable as a matter of law") (Ex. 26).

Quanta's claim to summary judgment is even stronger than the employer's claim in *Gilmartin* because Devaney admits that he and Trident *did not* have a binding agreement for any additional compensation:

> Q:    Is it your – are you alleging or claiming that a binding final agreement ever existed between you or Trident and any Quanta entity regarding the new venture or any carrying interest in the new venture?
>
> Q:    No.

Ex. 6 at 396:10-16.

Earlier this year, the Supreme Court of Texas explained why a plaintiff cannot use a claim of fraud (or promissory estoppel or negligent misrepresentation) to enforce an alleged agreement that does not constitute an enforceable contract:

> To recover for fraud, one must prove justifiable reliance on a material misrepresentation. A representation dependent on continued at-will employment cannot be material because employment can terminate at any time. Nor can one justifiably rely on the continuation of employment that can be terminated at will. "I will if I want to" is not fraud. And no one can claim recovery of damages for the loss of an employment relationship he had no right to continue.
>
> To allow a promise that is contingent on continued at-will employment to be enforced in a suit for fraud would mock the refusal of enforcement in a suit for breach of contract, making the non-existence of a contract action largely irrelevant, and would significantly impair the at-will rule. An employee who could not show consideration for an enforceable contract could simply sue for fraud and recover not only the same actual damages but punitive damages as well.

*Sawyer, et al. v. E.I Dupont De Nemours and Co.*, No. 12-0626, slip op. at 7-9 (Tex. April 25, 2014) (ex. 30).

It is undisputed that plaintiffs never reached agreement with Quanta for *any* additional compensation. Plaintiffs merely allege that an *undetermined* plaintiff (either Devaney or Trident) was among some *undetermined* number of employees that would be entitled to an *undetermined* share of an employee carried interest or profit sharing plan that would be triggered by *undetermined* future events and would last for an *undetermined* amount of time.

Such vague and indefinite promises do not constitute an agreement.  *Shaw*, 197 S.W.3d at 856.  Because the promises plaintiffs have pled are too indefinite to be enforceable, they cannot support reasonable reliance as a matter of law.  *Gilmartin*, 985 S.W.2d at 559.

> b.   The Statute of Frauds bars enforcement of the alleged promises

Even if plaintiffs had alleged the existence of a binding, final agreement, the statue of frauds prohibits enforcement of that agreement. "An agreement which is not to be performed within one year from the date of making of the agreement" is not enforceable unless the agreement is "in writing; and signed by the person to be charged with the promise or agreement or by someone lawfully authorized to sign for him."  TEX. BUS. & COM. CODE § 26.01.  Plaintiffs allege that they are entitled to an undetermined share of all of Quanta's international and government business *over a period of at least eight years*, *see* Ex. 15, ¶ 24, but it is undisputed that there is no written or signed agreement granting plaintiffs such an interest (nor is there any allegation of a written, signed agreement for any additional compensation).  Ex. 6 at 396:10-16.

Texas courts have held that the statute of frauds bars a claim when plaintiffs allege an agreement that would last for multiple years, seek enforcement of that agreement for a period beyond one year, and do not allege breach of the oral agreement until years after the alleged promises were made.  *See, e.g.*, *Barrand, Inc. v. Whataburger*, 214 S.W.3d 122, 142 (Tex. App. – Corpus Christi 2006, pet. denied).

Here, plaintiffs allege that Quanta first made the alleged promises in September 2004, yet they seek to recover for projects Quanta performed over at least the next *eight years*, and plaintiffs did not allege that Quanta breached the agreement until 2012, *eight years after plaintiffs allege Quanta made the promises*.  Plaintiffs' alleged promises are not enforceable under the statute of frauds.  Plaintiffs cannot use their fraud-based claims to frustrate the purpose

of the statute of frauds and circumvent the rule by enforcing an unenforceable agreement.  *See id.*  ("The statute of frauds exists to prevent fraud and perjury in certain kinds of transactions by requiring agreements to be set out in a writing signed by the parties.  That purpose would be frustrated and the statute could be easily circumvented if a party could recover the benefit of an unenforceable contract . . .") (internal citations omitted).

Moreover, plaintiffs in this case seek to recover additional compensation based on a proposed *employee* compensation plan, but they do not allege an employment contract that would modify their at-will status. *See Collins v. Allied Pharmacy Management*, 871 S.W.2d 929, 938 (Tex. App. – Houston [14 Dist.] 1994, no pet.) (stating that an alleged oral employment agreement that did not clearly identify a term and the parties' rights was insufficient to modify at-will employment). Plaintiffs were not even at-will employees; rather they served as at-will outside consultants who were paid based on monthly invoices.  Plaintiffs' alleged promises are unenforceable under any theory of recovery.

c.   Plaintiffs could not have relied on unspecified promises of "additional compensation" and Quanta's ability to perform unidentified projects

All of plaintiffs other fraud-related factual allegations fare no better.  Plaintiffs claim that "Devaney would be the president and head of [QGS and QIL] and would receive the benefits and equity rights that go along with such a position," Ex. 15, ¶ 30, and that Quanta misled plaintiffs about its "financial information and operational costs" that prevented it from delivering on the business Devaney developed.  *Id.*, ¶¶ 24, 34.  Even if such statements were made (they were not) they fail as a matter of law to give rise to fraud or any other alleged tort.

Plaintiffs do not allege that they were promised any specific amount of additional compensation, nor have they alleged when Devaney should have been made President of QGS and QIL or for how long Quanta was required to have him serve.  During his deposition,

Devaney explained the basis for his claim that he was entitled to additional compensation if he were head of QGS and QIL: "Somebody had to run it.  Presumably it was going to be me.  It was promised to be me.  All the division vice-presidents or the division presidents, Wilson and Trawick, had certain discretionary stock packages and other prerequisites, NetJet miles, *whatever.  Who knows.*"  Ex. 6 at 175:6-14 (emphasis added).   Under similar circumstances, courts have repeatedly held that such vague and indefinite allegations do not create binding employment contracts upon which a plaintiff can justifiably rely.

In *Collins v. Allied Pharmacy Management*, 871 S.W.2d 929, (Tex. App. – Houston [14 Dist.] 1994, no pet.), the appeals court affirmed a trial court's grant of summary judgment for the defendant on the plaintiffs' fraud and promissory estoppel claims, holding that an alleged offer of future employment was too vague to support justifiable reliance.  The court noted that the plaintiffs' could not justifiably have relied on an agreement for employment that provided for no specific length of time and had no clear limit on the employer's freedom of action.  *Id.* at 938.

Plaintiffs' alleged promise here of additional compensation not only lacks the specificity in length of time and limits on the employer's freedom of action the Court found fatal to the plaintiffs' claims in *Collins*, but Devaney also admitted that he was not promised any specific amount or even kind of compensation (NetJet miles, discretionary stock packages, etc.).  Ex. 6 at 175:6-14.  Moreover, as a public company, Quanta disclosed, on an annual basis, the precise compensation paid to its executives. Devaney was never a Quanta executive, much less one entitled to benefits including profit sharing, or other prerequisites.  Under these facts, Devaney's claims (even if true) do not – and could not – support reasonable reliance.  *See Collins,* 871 S.W.2d at 938*; Gilmartin*, 985 S.W.2d at 559 ("we have already concluded that the terms of the oral promises were too indefinite to constitute a modification of at-will employment . . .

23

Gilmartin's pleadings do not indicate any promises or assurances upon which reliance can be reasonably made.").

Plaintiffs' claim that Quanta falsely promised it had the financial resources and wherewithal to perform on the business Devaney developed fails for the same reason. Devaney testified that his pursuit of business to Quanta was based on his subjective expectations of their business:

> I put no business in front of Quanta that they either could not execute on, didn't have experience in, or didn't have the financial wherewithal to execute on. So every piece of business I put in front of Quanta was in their so-called wheelhouse, core competency . . . I mean I wasn't trying to make Quanta into a used car lot. I was giving them the business that they were in the business of . . . . "

Ex. 6 at 115:7-23. But as the court in *Collins* reasoned, reliance based on (1) promises that do not plainly delineate each party's rights and obligations, and (2) subjective expectations is unjustified as a matter of law. 871 S.W.2d at 938. Similarly, courts have held that reliance on alleged promises that plaintiff would "receive business and that the volume of the business would be a 'company maker'" was unreasonable because the parties "never discussed or negotiated specific pieces of business, the price, when and for how long such transactions would occur, or any other terms." *Simulis LLC*, 2008 WL 1747483 at *2.

Before joining Quanta, Devaney never discussed (let alone specifically identified) the business opportunities he "expected" to be in Quanta's "wheelhouse." Any reliance on his subjective expectations regarding what projects Quanta would and would not ultimately choose to perform was not reasonable as a matter of law. *See id.*

B.   Plaintiffs Have No Evidence of a Formal or Informal Fiduciary Relationship (Cause of Action IV)

Quanta is entitled to summary judgment on plaintiffs' breach of fiduciary duty and defalcation claims because Devaney has offered no evidence to support the existence of a

fiduciary relationship.  In order to prevail on a breach of fiduciary duty claim, the plaintiff must prove there is a fiduciary relationship exists between the parties.  *Priddy v. Rawson* , 282 S.W.3d 588, 599 (Tex. App. – Houston [14 Dist.] 2009, pet. denied).  Here, plaintiffs alleged both informal and formal fiduciary relationships with Quanta. S*ee* Ex. 15, ¶ 36. But have no evidence of either.

Plaintiffs cannot prove the existence of an informal fiduciary relationship between Devaney/Trident and Quanta because plaintiffs had no prior relationship with Quanta.  "While a fiduciary relationship or confidential relationship may arise from the circumstances of a particular case, to impose such a relationship in a business transaction, the relationship must exist prior to, and apart from the agreement made the basis of the suit."  *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 177 (Tex. 1997); s*ee also Plotkin v. Joekel*, 304 S.W.3d 455, 479 (Tex.App. – Houston [1 Dist.] 2009, pet. denied).  During his deposition, Devaney explained his relationship to Colson and Quanta when the alleged misrepresentations were being made:

Q:     You had never met John Colson prior to 2003 or '4 when you started doing work as a consultant for Quanta, right?

A:     That's true.

Q:     You're not related to John Colson, right?

A:     No.

Q:     You had – you've never done work for Quanta prior to 2004, right?

A:     You know, it's funny, I did not do any work for Quanta prior to that point. That's right.

                                        ***

Q:     So your relationship with Quanta began in December 2003 and with Colson in January of 2004?

A:     That's right.

Ex. 6 at 301:7-302:4; s*ee also* Ex. 1 at 202:16-20 (Colson deposition stating same).

Even if plaintiffs did have a preexisting relationship with Quanta, Devaney's claims that he became close with Colson through the course of their relationship, that he trusted Colson, and that he purchased Colson a gift and thought of him as a mentor do not rise to the level of an informal fiduciary relationship.   "An informal fiduciary relationship can arise form a moral, social, domestic or purely relationship of trust and confidence," *Anglo-Dutch Petroleum Intern. v. Smith*, 243 S.W.3d 776, 781 (Tex. App. – Houston [14 Dist.] 2007, pet. denied), but "[t]he mere fact that one subjectively trusts another does not alone indicate that confidence is placed in another *in the sense demanded by fiduciary relationships* because *something apart from the transaction between the parties is required*."   *Kline v. O'Quinn*, 874 S.W.2d 776 786 (Tex. App. Houston [14 Dist.] 1994, writ denied).   To that point, John Colson testified unequivocally that he did not consider Devaney a personal friend that he considered his relationship with Devaney no different than those he had with many Quanta employees:

> Q:     Did you consider Mr. Devaney to be a close personal friend of yours?
>
> A:     No.
>
> Q:     Did you consider him to be a confidant of yours?
>
> A:     No.
>
> Q:     How did your personal relationship with Mr. Devaney vary from the personal relationships you had with others at Quanta?
>
> A:     My relationship with Mr. Devaney was similar to the relationships I had with many people that work at Quanta.

Ex. 6 at 201:14-202:15.   Plaintiffs have no evidence of an informal fiduciary relationship as a matter of law.

Evidence of a formal fiduciary relationship is equally lacking. When asked for any facts supporting his claim that formal fiduciary duties arose between plaintiffs and Quanta, Devaney *refused to provide a single fact to support his claim:*

> Q:   Where you write, "Additional or alternatively, a partnership and/or joint venture relationship developed between Devaney and defendants involving the operations of QGS and QIL from which formal fiduciary duties arose"?
>
> A:   That's right.
>
> Q:   All right.  Please tell me all the facts, with as much specificity as you can recall, that support that sentence of your petition.
>
> A:   I can't answer that question right now.
>
> Q:   You understand that this is a claim that you have pled and it is on file with the Court?  Do you understand that?
>
> A:   I do.

*Id.* at 292:6-294:19.

Not only did Devaney refuse to provide any facts to support his claim, he in fact *disclaimed* the existence of a formal fiduciary relationship during his deposition by admitting that he no longer claimed a partnership that would give rise to a formal fiduciary relationship:

> Q:   So I'm clear about this, from your view, you and Trident did not have a partnership agreement with the defendants?
>
> A:   No.
>
> Q:   Is that correct?
>
> A:   That's correct.

Ex. 6 at 273:24-274:4.[7]

---

[7] To the extent Plaintiffs belatedly assert that they were part of another venture with Quanta or Colson that gave rise to fiduciary duties, any fiduciary duties would extend only to the other venture and would not be implicated by this lawsuit.  *See Rankin v. Naftalis*, 557 S.W.2d 940, 944-45 (Tex. 1977).

Plaintiffs' claim for defalcation also fails as a matter of law because they have no evidence that Quanta owed them any fiduciary duties. *See Plotkin*, 304 S.W.3d at 479. Under Texas law, a claim for defalcation is a more specific way of pleading breach of fiduciary duty. *See Stum v. Stum*, 845 S.W.2d 407, 415 (Tex. App. – Fort Worth, 1992) *disapproved on other grounds*, *Humphreys v. Meadows*, 938 S.W.2d 750 (Tex. App. – Fort Worth 1996); s*ee also* Ex. 15, ¶ 48 (alleging that Quanta is liable for defalcation based on the breach of "non-dischargeable fiduciary duties owed to Devaney"). Because plaintiffs cannot show that Quanta owed plaintiffs any fiduciary duties, plaintiffs' defalcation claim based on those duties fails as a matter of law.

C.    <u>Plaintiffs Negligence and Tortious Breach of Confidentiality Claims (Cause of Action III) Fail as a Matter of Law</u>

Plaintiffs' Second Amended Petition asserts a claim for negligence and tortious breach of confidentiality arising out of supposed top secret projects plaintiffs worked on, but that claim fails as a matter of law for three reasons: (1) Texas law does not recognize a general claim for tortious breach of confidentiality; rather, Texas law allows for common-law confidentiality claims based on misappropriation of trade secrets or breach of a confidential or informal fiduciary relationship, *see J.C. Kinley Co. v. Haynie Wire Line Service*, 705 S.W.2d 193, 196-198 (Tex. App. – Houston [1st Dist.] 1985, writ re'd n.r.e.); (2) there was no contractual or statutory duty of confidentiality between plaintiffs and Quanta; and (3) plaintiffs cannot show that Quanta misappropriated any confidential information.

In fact, when asked during his deposition for facts to support any breach of confidentiality by Quanta, Devaney could provide none and *<u>refused to answer</u>* on the basis of national security. Ex. 6 at 123:1-20. After more than 18 months of discovery, *<u>plaintiffs have not identified a single piece of allegedly confidential information that Quanta mishandled</u>*. That alone requires judgment in favor of Quanta on plaintiffs' confidentiality claims. *See Parker*

*Barber and Beauty Supply v. The Wella Corporation*, No. 03-04-00623-CV 2006 WL 2918571 at

\*17-18 (Tex. App. – Austin October 11, 2006, no pet.) (affirming summary judgment in favor of

the defendant where there was no evidence the defendant improperly obtained or misused any of

the plaintiff's confidential information) (Ex. 27).

It is undisputed, and Devaney admitted during his deposition, *that there was no*

*confidentiality agreement between plaintiffs and Quanta*.   Ex. 6 at 272:12-274:21.   The

unidentified confidentiality agreements plaintiffs discuss in paragraph 43 of the Second

Amended Petition are allegedly between Quanta and "foreign nations," not plaintiffs.   Ex. 15.

Plaintiffs cannot enforce agreements to which they were neither a party nor a third-party

beneficiary.   *See MCI Telecoms. Corp. v. Texas Utils. Elec. Co.*, 995 S.W.2d 647, 651 (Tex.

1999).   The fact that plaintiffs allege that "Quanta Government Solutions" signed some of the

unidentified confidential agreements does not allow plaintiffs to enforce those agreements in an

individual capacity.   Neither Trident nor Devaney can sue in an individual capacity to enforce an

agreement made between Quanta Government Solutions and a third party. *See Cavaness v.*

*General Corp.*, 283 S.W.2d 33, 35-36 (Tex. 1955) (holding that an individual who signed a

licensing agreement on behalf of a corporate entity could not bring an action to enforce the

agreement in his personal capacity.")

Plaintiffs also cannot show that Quanta breached any statutory duty of confidentiality.

Plaintiffs allege that Quanta breached duties of confidentiality it owed to the United States and

foreign governments under federal laws related to national security.   Putting aside that this is a

patently false allegation, plaintiffs do not allege that Quanta breached any duties of

confidentiality *owed to plaintiffs*.     Plaintiffs allege that Quanta breached its duties of

confidentiality under the National Industrial Security Program Operating Manual (it did not), but

NISPOM does not create a duty of confidentiality between Quanta and plaintiffs.  The only duties plaintiffs allege Quanta owed under NISPOM were to the United States or foreign governments, *not plaintiffs*.  *See* Ex. 15, ¶¶ 44-45.  Absent a duty to maintain information in confidence, which does not exist here, plaintiffs cannot recover as a matter of law.  *See J.C. Kinley Co. v. Haynie Wire Line Service*, 705 S.W.2d at 196-198; *Parker Barber and Beauty Supply*, 2006 WL 2918571 at *17 (granting summary judgment on misappropriation claims where duty of confidentiality did not extend to information allegedly misappropriated).

Nor can plaintiffs prove misappropriation of trade secrets that would allow them to recover in the absence of a contractual or statutory duty of confidentiality.  To establish a claim for breach of confidentiality, plaintiffs must show: (1) the existence of a trade secret belonging to plaintiffs; (2) breach of a confidential relationship or improper discovery of the trade secret; (3) use of the trade secret; and (4) damages. *See General Insulation Co. v. King*, No. 14-08-00633-CV, 2010 WL 307952, at *3 (Tex. App. – Houston [14 Dist.] Jan. 26, 2010, no pet.) (Ex. 28); *see also IBP, Inc. v. Klumpe*, 101 S.W.3d 461, 471 (Tex. App. – Amarillo, 2001, pet. denied) (stating that the claim for misappropriation of confidential information belongs to the owners of that information).  Plaintiffs cannot prove any of those elements here:

- After more than 18 months of discovery, plaintiffs have not identified a single pricing projection, bid document, or other information that Quanta allegedly misappropriated, nor do plaintiffs explain how Quanta could have misappropriated bid and pricing *information generated internally at Quanta for projects Quanta considered bidding on*;

- During his two-day deposition, Devaney *never alleged (individually or in his corporate representative capacity) that Quanta misappropriated any confidential information belonging to plaintiffs*, despite repeated questions asking him to identify all his complaints with defendants' actions. *See* Ex. 6 at 374:24-377:17;

- Devaney has produced zero documents or testimony that shows – let alone mentions – *misappropriation of confidential information belonging to plaintiffs*.

In short, this is a made up, after-the-fact claim that has zero legal or factual basis.

Because they have not identified any confidential information that Quanta allegedly misappropriated, plaintiffs cannot show that the information was secret, that Quanta breached a confidential relationship with respect to that information, that Quanta used the information to plaintiffs' detriment, or that plaintiffs were damaged by any such breach.  In fact, the only allegation that Quanta mishandled confidential information belonging to plaintiffs is "*the inference*" – and nothing more – that Quanta took proprietary information allegedly "created by Devaney," and later used that information to bid on other projects.  Ex. 15, ¶ 17.  That "inference," however, is based on a faulty factual premise.

Plaintiffs' claim that "[p]rior to the botched Kuwait Power Grid Project, Quanta had never bid or procured any power grid project in the region or abroad, " *id.* ¶ 42, *is indisputably false*.  Devaney admitted during his deposition that Quanta had bid on a project to upgrade South Africa's power grid in 2007 and was awarded the project in 2009.[8]  Ex. 6 at 335:2-14.   Devaney also admitted that he had no significant involvement in Quanta's successful South Africa bid and project.  *Id.*

Even if the foundation of plaintiffs' inference were correct and even if plaintiffs alleged that they had confidential information that Quanta misused, Quanta would still be entitled to summary judgment because mere suspicion of improper use of a trade secret is insufficient to defeat summary judgment.  In *Green Garden Packaging Co. v. Schoenmann Produce Co.*, No. 01-09-00924, 2010 WL 4395448 (Tex. App. – Houston [1 Dist.] Nov. 4, 2010, no. pet.) (Ex. 29), the court affirmed a trial court's grant of summary judgment for the defendant on the plaintiff's misappropriation of trade secret claims because, *inter alia*, plaintiffs had no evidence that the

---

[8] Devaney admitted that "Quanta Energized Services went to South Africa, and from the period of the mid – the summer of '07 until the actual contractual award May of '09, marketed their services to a failing and highly messed up electric grid in advance of the World Cup Games in 2010."  Ex. 6 at 335:2-12.  Devaney also testified that he "did not have much involvement in that particular job."  *Id.* at 335:13-14.

defendant disclosed plaintiffs' confidential information to competitors aside from their "belief" that plaintiffs had done so. *Id.* at *8-9. Plaintiffs' allegations here are based on the same belief and inference the court found insufficient as a matter of law in *Green Garden Packaging*, Quanta is therefore entitled to summary judgment on plaintiffs' negligence and breach of confidentiality claim.

> D.  Plaintiffs' Quantum Meruit Claim  (Cause of Action VI) Fails as a Matter of Law

Plaintiffs cannot recover for unjust enrichment for two reasons: (1) there was an express agreement for how much Quanta would pay for Devaney's consulting services; and (2) plaintiffs never reasonably notified Quanta that they believed they were entitled to additional compensation until *eight years* after Quanta began the relationship.  In 2004, the parties agreed that plaintiffs would receive $1,000 dollars per day in "contract fees" for services establishing Quanta's international and government business.  Ex. 3; Ex. 6 at 58:6-59:10.  *That is exactly what happened for eight years.* It was only in 2012, after Quanta terminated the relationship, that plaintiffs requested additional compensation for their past work.

The undisputed summary judgment evidence however, shows that plaintiffs and Quanta agreed to an express contract for plaintiffs' services:

- Plaintiffs initially charged $1500 per day for their services. Ex. 2.

- The parties later agreed to reduce plaintiffs' rates for their "contract fees" to $1,000 per day for five days week.  Ex. 3.

- For years, plaintiffs continued to submit monthly invoices for their contract fees, which Quanta timely paid.  Ex. 8.

- Each invoice stated that it was "[f]or professional services rendered by Patrick Devaney for the establishment of Quanta Services International and Government Business."  *Id.*

- Quanta paid plaintiffs $2,825,630.34 pursuant to their agreement.  Ex. 20.

- After Quanta terminated the consulting relationship, Devaney first sought an additional $8 million payment for his services.  Ex. 12.

When a plaintiff has a contract for services covering the materials of services provided, that contract bars recovery under quantum meruit.  *Pepi Corp. v. Galliford*, 254 S.W.3d 457, 462 (Tex.App. – Houston [1st Dist] 2007, pet. denied); *San Antonio Masonry & Tool Supply v. Esptein & Sons Intern.*, 281 S.W.3d 441, 445-56 (Tex. App. – San Antonio 2005, no pet.). Plaintiffs contract fees were for "the establishment of Quanta Services['] International and Government Business" – *exactly the "services" for which plaintiffs now seek to recover*.  Having agreed to contract fees for consulting services, plaintiffs cannot now recover *any* amount under quantum meruit for those same services, much less the *$8 million bonus* plaintiffs first claimed in 2012.  *See San Antonio Masonry & Tool Supply*, 281 S.W.3d at 445 (affirming grant of summary judgment for defendant on plaintiff's quantum meruit claims where plaintiff submitted six invoices for materials in dispute under open account arrangement).

Throughout the consultancy, the only time Devaney suggested that he wanted to discuss any additional compensation was as a "bonus" for the proposed Kuwait MEW deal.  But even then, plaintiffs' *requested* additional compensation for a potential contract to be completed in the future.  Plaintiffs never suggested they were entitled to compensation in addition to their contract fees for past services. *See*  Ex. 9 at 2 ("The end result that I am delivering to Quanta is, in my opinion, beyond the day-to-day scope of my Consultancy – I hope we can "agree-to-agree" on fair compensation to me for this important opportunity."); Ex. 10 ("[l]et's get back to optimism – and have a discussion about a bonus plan and performance fee for me when Quanta closes this business!").

Because Plaintiffs failed to put Quanta on notice of the extraordinary amount of additional compensation to which they now claim they are entitled, they cannot recover.  *See Hedenfels*

*Bros. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992); *Wohlfahrt v. Holloway*, 172 S.W.3d 630, 636-637 (Tex.App. – Houston [14 Dist.] 2005, pet. denied) (holding that defendant did not have reasonable notice that plaintiff expected payment because plaintiff did not submit bill for nine years' service until suit was filed).

E.   Plaintiffs' Unjust Enrichment Claim (Cause of Action VIII) Fails as a Matter of Law

Plaintiffs' express contract with Quanta for consulting services also bars their claim for unjust enrichment.   "The existence of an express contract is an affirmative defense to an equitable claim for quantum meruit or unjust enrichment." *Protocol Technologies, Inc. v. J.B. Grand Canyon Dairy, L.P*, 406 S.W.3d 609, 614 (Tex. App. – Eastland 2013, no pet.) (citing *Tricon Tool & Supply, Inc.*, 226 S.W.3d 494, 500 (Tex. App. – Houston [1st Dist] 2006, pet. denied).   In *Protocol Technologies*, the Eastland appeals court affirmed a grant of summary judgment for the defendant on unjust enrichment claims because the existence of an open account purchasing arrangement constituted an express contract for the materials in dispute. *Id.* at 614. Here, as explained above in Section I.E., plaintiffs supplied consulting services to Quanta pursuant to contract fee forms.   Plaintiffs' submission of nearly 100 consulting invoices to Quanta bars any claim for unjust enrichment. *See id.*

Quanta is also entitled to summary judgment on the unjust enrichment claim because plaintiffs have not produced any evidence that Quanta was enriched unjustly.   Plaintiffs must show that Quanta "obtained a benefit from another by fraud, duress, or the taking of an undue advantage." *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 550 (5th Cir. 2010) (applying Texas law).   But as explained in Section V.A. above, plaintiffs cannot show that Quanta obtained any services from them by fraud or otherwise improperly.   Rather, the undisputed summary judgment evidence shows that Quanta paid all of plaintiffs' monthly invoices – to the tune of millions of

dollars – pursuant to the parties' agreement.  Plaintiffs have no evidence that Quanta was unjustly enriched when it paid plaintiffs consulting fees for eight years prior to this lawsuit and therefore cannot recover under an unjust enrichment theory.  *See id.* ("[plaintiff] has alleged no facts suggesting that [defendant] was unjustly enriched when it paid [plaintiff] only a salary for his services.  Accordingly, the district court did not err in dismissing this claim.").

F.      The State Court Granted Summary Judgment on Plaintiffs' Business Disparagement and Tortious Interference Claims (Cause of Action V) Because Plaintiffs Have No Evidence to Support Those Claims

At the February 28, 2014 summary judgment hearing, Judge Halbach granted summary judgment for Quanta on plaintiffs' business disparagement and tortious interference with business relations claims on the record.  Quanta's summary judgment motion showed that plaintiffs had no evidence of business disparagement or tortious interference, and plaintiffs did not come forward with any evidence to support those claims.  The Court therefore granted judgment for Quanta on the record.  ("THE COURT: Did you respond to them? [PLAINTIFFS' COUNSEL]: We didn't.  THE COURT: Then they're out of here.").  Ex. 16 at 28:12-25.  Those claims are therefore dismissed.  *See Samples Exterminators v. Samples*, 640 S.W.2d 873, 875 (Tex. 1982) ("A judgment is in fact rendered whenever the trial judge officially announces his decision in open court . . . in his official capacity for his official guidance whether orally or by written memorandum the sentence of law pronounced by him in any cause."). Despite this ruling plaintiffs' amended petition still contains these dismissed causes of action.

The state court got it right. Quanta is entitled to summary judgment on plaintiffs' claim for tortious interference with business relationships because they have no evidence Quanta wrongfully interfered with plaintiffs' business relationships.   In order to recover for "tortious interference with prospective business relations, a plaintiff must prove that the defendant's

conduct was independently tortious or wrongful." *Wal-Mart Stores. v. Sturges*, 52 S.W.3d 711, 726 (2001).  But as explained in sections V.A and V.C above, plaintiffs cannot prove that Quanta engaged in any independently tortious or wrongful conduct.  Because plaintiffs have no evidence that Quanta engaged in any independently tortious or unlawful conduct, they cannot prevail on their tortious interference claims as a matter of law.  *See Fluor Enters v. Conex Int'l. Corp.*, 273 S.W.3d 426, 442 (Tex. App. – Beaumont 2008, pet. denied) ("Because there is no evidence that Antalffy committed independently tortious conduct, he cannot be liable for tortious interference with Conex's prospective business relations with Atofina.").

Plaintiffs also have no evidence that any alleged tortious interference caused them actual damage or loss. Devaney testified that he simply had not tried to pursue any deals since being terminated by Quanta:

Q:      And of any of the entities listed in paragraph 42, have you or Trident tried to get or couldn't get any work from them since you left Quanta in 2012?

A:      Since I left Quanta in 2012, I was loathe to go overseas and do anything because of the breach.

Q:      So the answer is you haven't attempted to get any work from any of the entities listed in paragraph 42 since you left Quanta in 2012?

A:      I haven't attempted any international business up until literally a month ago.  And none of those entities are people I've contacted.

Ex. 6 at 350:20-351:6.  Even if plaintiffs could prove that any act by Quanta or Colson tortiously interfered with their business relationships – they cannot – plaintiffs' claims' still would fail as a matter of law because they have no evidence of damages suffered as a result.  *See Hill v. Heritage Resources, Inc.*, 964 S.W.2d 89, 124 (Tex. App. – El Paso 1997, pet. denied) (identifying damages as an element of tortious interference claim); Ex. 6 at 350:20-351:6.

Devaney's business disparagement claim also fails because Devaney can point to no evidence that Quanta made a false statement with malice that caused Devaney damages. To prevail on a claim for business disparagement, a plaintiff must prove: (1) the defendant heard by or published to an identifiable third party; (2) the words were false; (3) the defendant published the words with malice; (4) the defendant published the words without privilege; and (5) the publication caused special damages. *See Forbes Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 170 (Tex. 2003).

Devaney's petition does not identify a single communication in support of his business disparagement claim. Instead, all of the facts relate to his alleged tortious interference with business relationship claims. *See* Ex. 15, ¶¶ 49-54. During his deposition, Devaney identified only a handful of emails discussing mostly petty gripes among employees as the basis for his business disparagement claim. Specifically he alleged:

- That he was "insulted" when Quanta employee Duke Austin "taunted" Devaney by telling Jim O'Neil privately, "let's see what Devaney can do," when Quanta was investigating the Kuwait project. Ex. 6 at 351:23-352:5.

- That Quanta employee Damir Novesel sent an email to a third party stating: "By the way, Kuwait (not unexpectedly considering incompetency of Pat Devaney) turned out to be a bust." Ex. 18; Ex. 6 at 352:25-353:4.

- That he "had received a – a note, e-mail from my friend, General Stringham, who was at Alutiiq and had cautioned me that [Quanta employee] Ginger James was out to dig up dirt and somehow get rid of me, was the essence of the communication." Ex. 6 at 353:13-17.

None of these alleged emails rises to the level of a false statement, made with malice, that caused Devaney specific damages. *Dworschak v. Transocean Deepwater Drilling, Inc.*, 352 S.W.3d 191, 198-99 (Tex. App. – Houston 2011, no pet.).

Moreover, none of the individuals identified in the bullet points above is a party to this lawsuit, and Quanta has not alleged any theory of liability under which Quanta can be held liable

for its employees' alleged disparaging statements.  Devaney does not even allege that Ginger James, who serves as Vice President of QGS, was acting within the scope of her employment in making allegedly disparaging remarks about him.  He claims instead that she was hurting the company by making statements for her own personal gain and gunning for a new job.  Ex. 19.

Not surprisingly, Devaney has no evidence that he suffered any special damages as a result of the alleged "disparagement."  "Proof of special damages is an essential part of the plaintiffs' cause of action for business disparagement."  *Hurlbut v. Gulf Atlantic Life Ins. Co.*, 749 S.W.2d 762, 767 (Tex. 1987).  "The requirement goes to the cause of action itself and requires that plaintiff 'establish pecuniary loss that has been realized or liquidated as in the case of specific lost sales.'"  *Id.* (quoting RESTATEMENT (SECOND) OF TORTS § 632 (1977)).

G.     Plaintiffs' Claims Are Barred by the Statute of Limitations

Because Devaney's claims are based on promises that he alleges were made to him beginning in 2004, all of his claims are barred by the applicable statute of limitations.  Underlying all of plaintiffs' claims is their unsupported argument that Quanta promised plaintiffs additional compensation for his services, including an ownership interest in Quanta's international and government business that was going to be triggered when Quanta's international or government business met certain unspecified revenue or profit thresholds.  But plaintiffs knew (or should have known) from Quanta's public filings long before December 31, 2008 that Quanta could not have promised plaintiffs an interest in Quanta's international and government business.

1.     Plaintiffs knew or should have known that the alleged "promise" was not a promise more than four years prior to filing suit

Plaintiffs filed suit on December 31, 2012, more than eight years after their association with Quanta began.  The statute of limitations for fraud claims is four years.  TEX. CIV. PRAC &

REM. Code § 16.004.  A cause of action for fraud accrues on the date the defendant makes the false representation, and the limitations period begins to run on the date discovered or should have discovered the fraud through the exercise of reasonable diligence.  *Computer Associates Intern., Inc. v. Atlai, Inc.*, 918 S.W.2d 453, 455 (Tex. 1996).

Long before December 31, 2008, plaintiffs knew or should have known that Quanta did not intend to grant plaintiffs' an ownership interest in all of Quanta's government and international business through the employee carried interest in plaintiffs' proposed business plan. As a publicly traded company, Quanta made annual filings and SEC required disclosures concerning executive compensation, stock ownership, profit sharing and corporate structure and financials each year plaintiffs worked with them.  Plaintiffs' relationship with Quanta – and their alleged current or future ownership interest in its government or international business – was never once mentioned in any public filing.

Quanta disclosed its executive compensation schemes to the public in its annual reports every single year.  *See, e.g.* Ex. 21 at 111.  Those annual report also identified (and discussed the approval process for) a Quanta stock incentive plan that bore no resemblance to the employee carried interest plan Devaney alleges he was promised here.  Ex. 21 at 91.  Its proxy statements disclosed exactly what every senior executive Devaney compared himself to during his deposition received in compensation from Quanta in stock, salary, and other compensation and explained the basis for Quanta's executive compensation scheme.  *See, e.g.*, Ex. 22 at 6, 16-25. Plaintiffs' claims for additional compensation are barred by the statute of limitations.

        2.   The discovery rule does not apply to save plaintiffs' other claims

Acknowledging that eight-year delay in filing suit would otherwise be fatal to their claims, plaintiffs have pled the discovery rule, but that rule does not apply here.  The discovery

rule is a "very limited exception to the statutes of limitations" that is applicable "only when the nature of the plaintiff's injury is both inherently undiscoverable and objectively verifiable." *Wagner & Brown Ltd., v. Horwood*, 58 S.W.3d 732, 734 (Tex. 2001). "An injury is inherently undiscoverable if it is, by its nature, unlikely to be discovered within the prescribed limitations period despite due diligence. *Id.* (citing *S.V. v. R.V.*, 933 S.W.2d 1, 7, (Tex. 1996)). But as explained above, there was nothing "inherently undiscoverable" about plaintiffs' refusal to provide plaintiffs with any additional compensation beyond the consulting fees that Quanta paid for eight years.[9]

<div align="center">VI.</div>

<div align="center">Conclusion</div>

Quanta is entitled to summary judgment on all of plaintiffs 'claims. Plaintiffs have no evidence to support their claims and the allegations complained of (even if true) do not, as a matter of law, give rise to liability. Their claims should be dismissed with prejudice and a take nothing judgment entered.

---

[9] Plaintiffs also plead fraudulent concealment as a statute of limitations excuse, but fraudulent concealment requires proof of reasonable reliance. *American Home Tobacco v. Grinnell* , 951 S.W.2d 420, 436 (Tex. 1997). As explained in Section IV.A, Plaintiffs could not reasonably have relied of any of the alleged promises.

Respectfully submitted,


*/s/ Shawn L. Raymond*
Shawn L. Raymond
S.D. Adm. # 26202
1000 Louisiana Street, Suite 5100
Houston, Texas 77002-5096
Telephone:  (713) 651-9366
Fax:  (713) 654-6666
Email:  sraymond@susmangodfrey.com

*Attorney-in-Charge for Defendants Quanta Services, Inc., Quanta Government Solutions, Inc., Quanta Government Services, Inc., Quanta International Limited, and John Colson*

Of Counsel:
Eric J. Mayer
S.D. Adm. # 09698
Matthew Behncke
S.D. Adm. # 1121174
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, Texas 77002-5096
Telephone:  (713) 651-9366
Fax:  (713) 654-6666
Email: emayer@susmangodfrey.com
Email: mbehncke@susmangodfrey.com

<u>Certificate of Service</u>

I certify that on July 3, 2014 this document properly was served on counsel of record via email and/or electronic filing in accordance with the USDC, Southern District of Texas Procedures for Electronic Filing:

> Jacob De Leon
> DE LEON LAW FIRM
> 1250 Four Houston Center
> 1331 Lamar Street
> Houston, Texas 77010-3027

*/s/ Shawn L. Raymond*
Shawn L. Raymond